## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

No. 4:14-CV-00137-FL

| | |
|---|---|
| KENNETH E. BARROW, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, -22] pursuant to Fed. R. Civ. P. 12(c). Claimant Kenneth E. Barrow ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant also filed a supplemental memorandum in support of his motion. [DE-27]. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on November 22, 2010, alleging disability beginning December 31, 2007. (R. 11, 155-61, 169). Both claims were denied initially and upon reconsideration. (R. 69-88). A hearing before the Administrative Law Judge ("ALJ") was held on January 31, 2013, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 24-61). On March 14, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 8-23). The Appeals Council denied Claimant's request for review on June 6, 2014. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to appropriately account for Claimant's mental impairments; (2) failure to impose stooping and crouching limitations in the RFC; (3) failure to impose limitations based on Claimant's neuropathy in the RFC; and (4) failure to determine whether Claimant was disabled after his date last insured ("DLI"). Pl.'s Mem.

3

## IV. FACTUAL HISTORY

### A.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful activity since the alleged onset date. (R. 13). Next, the ALJ determined Claimant has the following severe impairments: degenerative disc disease, diabetes with neuropathy, recurrent hernias, hypertension, obesity, depression, and cognitive disorder. *Id.* The ALJ also determined Claimant had the following non-severe impairments: sleep apnea, right calf deep venous thrombosis, seizure-like syncopal episodes, and diarrhea and weight loss. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation, which have been of an extended duration. (R. 14-15).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a range of medium work with the following limitations: stand or walk and sit for six out of eight hours, lift and carry 50 pounds occasionally and 25 pounds frequently, must avoid concentrated exposure to hazards, moving machinery, and unprotected heights, and can only perform

4

simple, routine, repetitive tasks.[1] (R. 15-18). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 16). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 18-19).

## B.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing he was 53 years old (although he testified to being 54), separated from his spouse, and living with his parents. (R. 30-31). Claimant completed high school and obtained an associate's degree in photography technology. (R. 30). Claimant could not remember in what year he last worked, only that it was in the month of November, and he could not remember whether he had worked since his alleged onset date of December 31, 2007. (R. 32-33). Claimant's last job was working as a production manager at Tracewell Systems for two years, and his duties included organizing work orders, scheduling jobs, managing the production line, and hiring and terminating employees. (R. 33-34). Claimant's job required him to spend about half the day sitting and the other half standing or walking. (R. 33-34). Claimant left Tracewell because he had problems with his feet and back, problems mentally dealing with situations, and he was also asked to resign. (R. 34, 49). Claimant worked some temporary jobs after leaving Tracewell, but not for very long. (R. 33).

Claimant filed for disability because he was having trouble doing work and maintaining a

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If an individual can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

5

job due to pain in his lower back, legs, and feet and numbness in his feet and hands. (R. 35-36). Claimant began experiencing lower-back pain after a motorcycle accident in the sixth grade, but his pain has worsened over time and is exacerbated by sitting, standing, and bending over. (R. 38-39). His back pain is constant, and pain medication makes it bearable. (R. 40-41). Claimant's neck pain started after he began doing computer work frequently at Tracewell, or perhaps earlier. (R. 39). Claimant experiences a burning sensation in his legs caused by the nerves in his back and muscular weakness and tightening, which is exacerbated by sitting and standing. *Id.*

Claimant also experiences depression and short-term memory loss. (R. 36). For example, Claimant gets lost going places and when asked to give an example of something he had forgotten that day, he responded, "I can hardly remember what's going on this morning." (R. 37). Although he takes medication for his memory issue, it is not effective. *Id.* Claimant receives treatment at the VA clinic where he sees a psychologist. (R. 34). Claimant is depressed because he cannot accomplish things and has low energy; he takes depression medication, which is ineffective. (R. 37, 41). Claimant also suffers from anxiety and generally feels it in his chest or feels detached. (R. 38). He was hospitalized in 2009 with suicidal and homicidal ideations, but attributes the episode to medication he is no longer taking and has not experienced these problems since. *Id.*

Claimant is 5 feet 11 inches tall and weighed 180 pounds at the administrative hearing, having lost about 70 pounds over the prior year due to problems with his stomach and intestines. (R. 31-32). Claimant experiences diarrhea and cannot eat any solid foods. (R. 42). He eats bananas and mashed potatoes, but has to juice vegetables and drink protein powders. *Id.* Claimant has had five hernias and had a mesh put in, but he does not think it is working and has pain in his diaphragm. (R. 42, 51). Claimant experiences sensitivity to light as a side effect of medication, although he

6

could not identify which medication. (R. 35). Claimant underwent a sleep study that revealed he was not resting properly. (R. 40). Claimant takes medication to help him sleep, but it makes him drowsy all day. (R. 35). Claimant experiences hand numbness caused by diabetes. *Id.* Claimant takes seizure medication, but could not remember the last time he experienced a seizure. (R. 43).

Claimant moved in with his parents because he could not care for himself and would forget to eat. (R. 48). On a typical day, Claimant wakes up between 8:30 a.m. and 11:00 a.m. and has a protein shake for breakfast. *Id.* Claimant's mother does the cooking and cleaning. (R. 44-45). Claimant goes to the grocery store to buy Gatorade, which he drinks to keep his electrolytes stable, but he can't walk long enough to shop for other items. (R. 45). Claimant used to build airplanes and boats, but stopped doing those hobbies several years ago. *Id.* Claimant sits in a recliner or lays on the couch with his feet up and watches television. (R. 46). He sometimes uses the computer, but he cannot do so for long because his wrist shakes when he tries to use the mouse. *Id.* Claimant has a driver's license and drives to the VA clinic once or twice a month. (R. 32). Prior to Claimant's September 30, 2009 DLI, Claimant could stand for 10 to 15 minutes before experiencing pain in his lower back and legs and could sit for only a few minutes before experiencing back pain. (R. 47). Claimant could walk, but not a long distance. *Id.* Claimant was limited to lifting 20 pounds prior to his DLI, but later was limited to lifting 10 pounds. (R. 48). Claimant indicated his activities prior to his DLI were generally consistent with his current activities. (R. 44).

## C.     Vocational Expert's Testimony at the Administrative Hearing

Edith Edwards testified as a VE at the administrative hearing. (R. 52-60). After the VE's testimony regarding Claimant's past work experience (R. 55-56), the ALJ asked the VE to assume a hypothetical individual of Claimant's age, education, and work background who is able to perform

7

at the medium exertional level and can stand and/or walk and sit for about six hours in an eight-hour work day, lift and/or carry 25 pounds frequently and 50 pounds occasionally, should avoid concentrated exposure to moving machinery, hazards, and unprotected heights, and can perform simple, routine, repetitive tasks (R. 56). The ALJ inquired as to whether the hypothetical individual could perform Claimant's past work, and the VE responded in the negative. (R. 57). However, the VE opined that such an individual could perform the occupations of janitor/industrial cleaner, Dictionary of Occupational Titles ("DOT") number 381.687-018, medium, unskilled, and SVP of 2; kitchen helper, DOT number 318.687-010, medium, unskilled, and SVP of 2; and cashier, DOT number 211.467-034, medium, unskilled, and SVP of 2. (R. 57). The VE indicated her testimony was consistent with the DOT. *Id.*

Claimant's counsel asked the VE whether an individual could perform substantial gainful activity if he could only sustain attention and concentration to be on task for one third of the day, and the VE responded in the negative. (R. 58). Counsel next asked the VE to add to the ALJ's hypothetical the restrictions of standing for 15 minutes at a time, sitting for five minutes at a time, and occasional fingering, and the VE opined there would be no jobs at the medium level but there may be some guard work that would allow for changing position and very limited hand use. (R. 59-60). In response to further questioning from counsel, the VE opined that missing three or more days of work per month would preclude competitive employment. (R. 60).

# V. DISCUSSION

## A. Non-Exertional Limitations

### *1. Mental Impairments*

Claimant contends the ALJ failed to appropriately consider his mental impairments.

8

Specifically, Claimant argues the ALJ should have conducted a function-by-function analysis and that Claimant's moderate limitations in concentration, persistence, and pace, as determined by the ALJ, are not sufficiently addressed by a restriction to simple, routine, repetitive tasks in the RFC and hypothetical to the VE. Pl.'s Mem. [DE-21] at 12-16; Pl.'s Suppl. Mem. [DE-27] at 3-5. The Commissioner contends the ALJ sufficiently considered Claimant's depression and memory problems, but determined them to be mild, and that mild or even moderate limitations are compatible with performing simple jobs. Def.'s Mem. [DE-23] at 9-10. The Commissioner further contends that the ALJ was not required to pose an "exhaustively detailed hypothetical question," and that Claimant's counsel should have discussed the issue of concentration, persistence, and pace with the VE at the hearing if it was important.[2] *Id.* at 10. The undersigned agrees with Claimant that the ALJ's RFC analysis and hypothetical to the VE were insufficient to address Claimant's mental impairments and moderate limitations in concentration, persistence, and pace.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their

---

[2] Claimant's attorney did, in fact, inquire of the VE regarding the issue of concentration, persistence, and pace, specifically asking whether an individual could perform substantial gainful activity if he could only sustain attention and concentration to be on task for one third of the day, and the VE responded in the negative. (R. 58).

cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

The RFC is utilized by the ALJ at steps four and five to determine whether the claimant can perform past work and, if not, whether there is other work the claimant can perform. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing S.S.R. 96-8p, 1996 WL 374184, at *3-4). Thus, a proper RFC is critical, and "[w]ithout a careful consideration of an individual's functional capacities to support [a residual functional capacity] assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* (quoting S.S.R. 96-8p, 1996 WL 374184, at *4).

As is often the case, the ALJ here utilized a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the

10

record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (unpublished) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). In other words, the hypothetical to the VE must be based on an accurate RFC. *See Massey v. Colvin*, No. 113CV965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (unpublished) ("VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC.") (citing *Walker*, 889 F.2d at 50-51).

At step three, applying the special technique prescribed by the regulations, the ALJ found Claimant's mental impairments have resulted in mild restrictions in his activities of daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation, which have been of an extended duration. (R. 14-15). However, as the ALJ acknowledged, this is not a substitute for the RFC assessment, which requires a "more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)." (R. 15); "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p, 1996 WL 374184, at *6.

In formulating Claimant's RFC, the ALJ stated as follows with respect to Claimant's mental impairments:

> [Claimant] is depressed and has memory problems. He goes places and becomes lost. He takes medication for his memory, but it does not help. He gets frustrated, has no energy, and becomes anxious. He feels detached. He was

11

hospitalized in 2009 for suicidal and homicidal thoughts. He has not had any more trouble with that since his medication was changed. . . . He has been seeing a psychiatrist. He cannot tell if the [depression] medication is helping.

. . . .

[Claimant] also reported psychiatric symptoms such as memory problems, attention and concentration difficulties, anger, irritability, and trouble sleeping. On mental status examination, he had an anxious and dysphoric mood. He had mild psychomotor agitation, but normal speech, thought content and thought processes. His performance on psychological testing was inconsistent, and there was a question regarding his effort (this testing occurred after the date last insured). There was some evidence of a mild cognitive impairment. He presented to the hospital in August 2009 with increased depressive symptoms and cognitive difficulties, as well as suicidal and homicidal ideation. He was started on medication, and was discharged two days later upon improvement-with a discharge global assessment of functioning score of 60. (At the hearing, the claimant reported that his acute symptoms and hospitalization was due to side effects from medication once the medication was changed, the claimant was no longer suicidal or homicidal.) He was otherwise treated with outpatient counseling and medication. (Exhibits 12E, 1F, 2F, 3F, 4F, 6F, 7F & 8F).

[Claimant] reported symptoms of depression, but his mental status examination has been only mildly abnormal. He was hospitalized briefly in 2009 due to a problem with his medication, but the evidence shows he quickly recovered with a medication change. Otherwise, this condition has been stabilized with medication and outpatient counseling. He reported significant memory problems, but his mental status examination did not support this. Testing showed only a mild cognitive impairment. He engaged in a wide array of activities that are inconsistent with a complete inability to work. To be sure, he would have some limitations from his conditions, but these limitations have been properly accounted for in the residual functional capacity assessed herein, giving the claimant every benefit of the doubt . . . .

(R. 16-17). The ALJ also considered Claimant's 50% disability rating from the VA for depressive disorder, stating that "[t]he record shows that the claimant does have significant, work related mental restrictions which is not incompatible with a 50% rating from the Veteran's Administration." (R. 18).

It is apparent from the ALJ's discussion that she believed limiting Claimant to performing

12

simple, routine, repetitive tasks sufficiently accounted for his "mild cognitive impairment." (R. 17). Yet, while generally characterizing Claimant's cognitive impairment as "mild" (R. 17), the ALJ specifically found Claimant to have "moderate difficulties" in concentration, persistence and pace (R. 14) and "significant, work related mental restrictions" (R. 18). The Fourth Circuit in *Mascio* held, in conformity with other circuits, that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The *Mascio* court explained that "the ability to perform simple tasks differs from the ability to stay on task" and "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court implicitly acknowledged there could be instances where a moderate limitation in concentration, persistence, or pace at step three does not require a limitation in RFC; however, there is no doubt that the failure to explain such a result is error requiring remand. *Id.* ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity.... But because the ALJ here gave no explanation, a remand is in order."). Thus, in light of *Mascio*, to the extent the Commissioner suggests a *per se* rule that mild or even moderate limitations are compatible with performing simple jobs, Def.'s Mem. [DE-23] at 10, such a rule is untenable and must be rejected.

Here, despite the ALJ's findings that Claimant had the impairments of depression and cognitive disorder and "moderate difficulties" in concentration, persistence and pace (R. 13-14), the ALJ failed to sufficiently consider how these impairments impact Claimant's "work-related abilities

13

on a function-by-function basis," S.S.R. 96-89, 1996 WL 374184, at *1, including the functions of "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting," 20 C.F.R. 404.1545(c), or the ability to stay on task, *Mascio*, 780 F.3d 638. On remand the ALJ must explain how Claimant's mental limitations impact Claimant's "ability to perform relevant functions" and sufficiently convey Claimant's mental limitations in the hypothetical to the VE. *Id.* at 637-38; *see also Scruggs v. Colvin*, No. 3:14-CV-00466-MOC, 2015 WL 2250890, at *6 (W.D.N.C. May 13, 2015) (unpublished) (remanding case where limitation to simple, routine, repetitive tasks and non-production work is insufficient to account for moderate difficulties in concentration, persistence, and pace) (citing *Raynor v. Colvin*, No. 5:14-CV-271-BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (unpublished) ("[R]emand is appropriate in this instance to allow the ALJ to properly account for plaintiff's limitations in concentration and persistence.")); *Salmon v. Colvin*, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished) (remanding case where the ALJ failed to address the claimant's ability to stay on task as required by *Mascio*).

Accordingly, it is recommended that the case be remanded for the Commissioner to properly consider, in conformity with *Mascio*, Claimant's mental impairments in formulating an accurate RFC and appropriate hypothetical to the VE.

### 2. *Stooping and Crouching*

In Claimant's supplemental memorandum, Claimant argues that the ALJ erred by not sufficiently explaining her reason for rejecting the restrictions of only occasional stooping and crouching suggested by the state agency consulting physicians. Pl.'s Suppl. Mem. [DE-27] at 2-3. The ALJ in evaluating the state agency non-examining physicians' opinions noted these doctors

14

suggested Claimant could perform work at the medium exertional level with only occasional stooping and crouching. (R. 17, 75-77, 85). However, the ALJ rejected the stooping and crouching limitations because she found them to be inconsistent with "the diagnostic and clinical examination and with [Claimant's] wholly conservative treatment." (R. 17). The stooping and crouching limitations suggested by the consulting reviewers were related to Claimant's degenerative disc disease and back pain. (R. 75-77, 85). The ALJ in analyzing these impairments concluded the diagnostic and clinical evidence indicated Claimant's degenerative disc disease was "mildly to moderately abnormal" and his treatment was "wholly conservative with medication." (R. 17). Therefore, it is clear from the ALJ's decision that she rejected the stooping and crouching limitations as unsupported based on her assessment of Claimant's back impairment and related pain. Claimant does not point to any evidence contradicting the ALJ's conclusion in this regard. Accordingly, the undersigned concludes the ALJ sufficiently explained her rejection of the stooping and crouching limitations suggested by the state agency consultants and substantial evidence supports the ALJ's decision.

## B.    Severe Impairment of Neuropathy

Claimant contends the ALJ failed to account for Claimant's impairment of neuropathy in the RFC, despite the ALJ having found the impairment to be "severe" at step two. Pl.'s Mem. [DE-21] at 16-18. In his supplemental memorandum, Claimant cites evidence of numbness, gait disturbances, and falls or fall risk as symptoms of his neuropathy the ALJ failed to account for in the RFC. Pl.'s Suppl. Mem. [DE-27] at 2. The undersigned finds no error in the ALJ's consideration of Claimant's neuropathy.

To the extent Claimant suggests that the ALJ must include in the RFC a corresponding

15

limitation for every impairment categorized as "severe" at step two, the undersigned cannot agree. The Fourth Circuit has recognized that "[s]tep two of the sequential evaluation is a threshold question with a de minimis severity requirement" and, in doing so, rejected the argument Claimant makes here—that the finding of a severe impairment at step two contradicts the conclusion that the impairment's impact on the claimant's functioning is mild. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (unpublished) (citing *Bowen v. Yuckert*, 482 U.S. 137 at 153-54 (1987); S.S.R. 88-3c, 1988 WL 236022 (Jan. 1, 1988)); *see also Short v. Colvin*, No. 1:12CV555, 2015 WL 3485061, at *5 (M.D.N.C. June 2, 2015) (unpublished) ("A finding of severe impairment at step two does not automatically become a limitation impacting the RFC."). Furthermore, the ALJ's analysis of Claimant's neuropathy contains no error.

Although at step two the ALJ determined Claimant had the severe impairment of diabetes with neuropathy (R. 13), in the RFC analysis the ALJ explained that "Claimant's diabetes appeared to be controlled with diet and exercise," "[h]e had some clinical evidence of peripheral neuropathy, but, again, this evidence was mild and gait was normal," and "there is no corroborating diagnostic evidence." (R. 17). There is substantial evidence in the record to support the ALJ's determination in this regard. Treatment notes from May 2008 indicate Claimant had mild diabetic neuropathy; however, the condition was noted to be stable. (R. 268). A neurology clinic note from November 18, 2011, indicates Claimant "had several EEGs in the past that have been unremarkable." (R. 524); *see also* (R. 378) (Nov. 30, 2010 EEG was normal). Claimant's gait was observed to be normal or steady on several occasions. (R. 281, 285, 290, 324, 407, 526, 705). "[T]he substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely

16

because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (unpublished). The court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). While the record reflects some intermittent complaints by Claimant of numbness in his hands and feet and gait disturbance, the ALJ cited substantial evidence supporting her conclusion that Claimant's diabetes was controlled, his neuropathy was mild, and his gait was generally normal. Accordingly, the ALJ did not err in assessing Claimant's neuropathy.

## C. Post-DLI Evidence

Claimant contends the ALJ erred in only determining disability through Claimant's DLI. Pl.'s Mem. [DE-21] at 21-23. Claimant argues the ALJ should have considered whether Claimant became disabled post-DLI and utilized a medical advisor to determine the onset of Claimant's disability. *Id.* The Commissioner contends the ALJ considered and discussed post-DLI evidence and that a medical advisor was not needed to determine the date of disability because the ALJ did not find Claimant to be disabled at any time. Def.'s Mem. [DE-23] at 11. The undersigned agrees with the Commissioner that the ALJ did not err in the consideration of post-DLI evidence.

When a claimant is seeking DIB, the law requires both a finding of disability and that the claimed disability begin before the expiration of insurance coverage, or the DLI. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005). The ALJ is not required to consider evidence tending to show that the disability existed after the DLI where the objective medical evidence does not show that the impairment existed before the DLI. *Johnson*, 434 F.3d at 656. Post-DLI medical evidence is not automatically excluded, however, and may be relevant to prove a disability arising before the

17

claimant's DLI. *Bird v. Comm'r of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012); *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969). Where post-DLI medical evidence may be probative of a claimant's pre-DLI disability status, "the ALJ may not consider post-DLI records to be automatically irrelevant." *Abernathy v. Astrue*, No. 4:08-CV-99-FL, 2009 WL 1578533, at *2 (E.D.N.C. June 3, 2009) (unpublished) (adopting memorandum and recommendation holding that the ALJ erred by summarily dismissing post-DLI medical evidence as irrelevant simply because it arose after claimant's DLI); *see also Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (medical evaluations made two years subsequent to the DLI are not automatically barred from consideration and may be relevant to prove a previous disability).

"SSR 83-20 addresses situations in which an ALJ finds that a person is disabled as of the date she applied for disability insurance benefits, but it is still necessary to ascertain whether the disability arose prior to an even earlier date—normally, when the claimant was last insured." *Bird*, 699 F.3d at 345 (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008)).

In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

S.S.R. 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983). The Fourth Circuit applied S.S.R. 83-20 in the *Bird* case, on which Claimant relies. In *Bird*, the claimant, a Vietnam War veteran, alleged disabling PTSD as of the date he last worked, which was several years before his DLI. *Id.* at 339. Bird had no medical records prior to his DLI, and his first medical records indicated he had not received treatment for several years. *Id.* However, subsequent records indicated that Bird's PTSD symptoms had persisted since he returned from Vietnam and that he had a long history of problems. *Id.* The

ALJ determined that Bird suffered from PTSD before his DLI, but that it was not severe enough to be disabling, based in part on the lack of pre-DLI medical evidence. *Id.* at 340. The Fourth Circuit then concluded that, on remand,

[i]f the ALJ determines that Bird has established a disability resulting from his PTSD, but that the medical evidence of the date of onset of that disability is ambiguous such that a retrospective inference to the period before Bird's DLI would be necessary, the ALJ will be required to obtain the assistance of a medical advisor in order to render an informed determination regarding the date of onset.

*Id.* at 345 (citation omitted).

Here, Claimant's DLI is September 30, 2009. (R. 11). Claimant seems to misconstrue the ALJ's statement that she concluded Claimant was not disabled through the date last insured, *id.*, to mean she did not consider Claimant's post-DLI records or whether Claimant became disabled at any point. The ALJ's decision indicates otherwise. The record contains treatment notes dating from 2008 through 2012, and the ALJ expressly considered all the medical records in formulating her decision, including post-DLI records related to the VA disability rating decision dated March 17, 2010, hernia repairs performed in December 2010 and 2011, psychological testing performed in February 2010, and Claimant's testimony regarding recent diarrhea and weight loss. (R. 13, 16-18) (citing Exhibits 12E, 1F, 2F, 3F, 4F, 6F, 7F & 8F, which include both pre- and post-DLI records). The ALJ explained why Claimant's impairments were not so limiting that Claimant was unable to work. (R. 17). Unlike in *Bird*, the ALJ here concluded Claimant's impairments were not disabling; as such, there was no disability onset date to determine, and S.S.R. 83-20 and *Bird* are inapplicable. Accordingly, the ALJ did not err in her consideration of the post-DLI evidence and did not violate the principles of S.S.R. 83-20 and *Bird*.

19

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-20] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-22] be DENIED and the case be REMANDED for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 31, 2015** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and**

**Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the _17_ day of August 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

Case 4:14-cv-00137-FL   Document 28   Filed 08/17/15   Page 21 of 21